# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Optio Rx, LLC, <u>et al</u>.[1] | Case No. 24-11188 (TMH) |
| Debtors. | (Jointly Administered) |
| Skin Medicinals LLC, | Adv. Pro. No. 24-50079 (TMH) |
| Plaintiff, | |
| v. | **Re: D.I. 4, 5, 15, 23, 47, 56, 58, and 79** |
| Optio Rx, LLC, Ben David, Arun Suresh Kumar, and Lisa Bassett Ippolito. | |
| Defendants. | |

## SUPPEMENTAL RULING DENYING SKIN MEDICINALS LLC'S MOTION FOR PRELIMINARY INJUNCTION

On July 1, 2024, this Court held an evidentiary hearing on Skin Medicinals

LLC's ("<u>Skin Medicinals</u>") Motion for Preliminary Injunction (the "<u>Motion</u>") [D.I. 4,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical, LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary, LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy, LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

6]. On July 12, 2024, I delivered my ruling on the Motion from the bench.[2] I entered a related order on July 15, 2024 (the "PI Order") [D.I. 58]. Skin Medicinals appealed. On August 6, 2024, the United States District Court for the District of Delaware entered an order vacating the PI Order (the "District Court Order") [D.I. 79].

By the District Court Order, the District Court vacated and remanded the PI Order, and instructed this Court to set forth findings of fact and conclusions of law to support my determination that injunctive relief was not warranted on the basis of Optio Rx, LLC's alleged violations of the anti-computer hacking statues, CFAA (18 U.S.C. § 1030) and CADRA (Fla. Stat. § 668.001 et seq.). This ruling therefore supplements the ruling I made on the record on July 12, 2024.[3]

In February 2024, Ben David, who is Optio Rx's Chief Executive Officer, texted Lisa Bennett Ippolito, a Florida nurse practitioner, to ask that she obtain credentials to log in to the prescriber-only portion of Skin Medicinals' website because he wanted to "get in and see how it works." Ms. Ippolito went ahead and obtained the credentials and sent them to Mr. David.

Mr. David or others acting on his instructions accessed the Skin Medicinals website on during February and March 2024 and downloaded certain documents from the website.

---

[2] The transcript of the July 1, 2024 hearing appears on the docket of this adversary proceeding at D.I. 45.
[3] My July 12, 2024 oral ruling is incorporated herein and is, except as otherwise set forth in this supplemental ruling, is unaltered.

2

To show that there has been a violation of the CFAA, a plaintiff must show that the defendant "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period." 18 U.S.C. § 1030(a)(4).

Under CADRA, a plaintiff must demonstrate that the defendant "[o]btain[ed] information from a protected computer without authorization and, as a result, causes harm or loss." Fla. Stat. § 668.803(1).

Because the CFAA and CADRA are similar, courts often will analyze claims arising under those statutes together when considering a request for preliminary relief. <u>Fla. Atl. Univ. Bd. of Tr. v. Parsont</u>, 465 F. Supp. 3d 1279, 1289–90 (S.D. Fla. 2020).

Each of the CFAA and CADRA require that the defendant obtained access to a "protected computer." Under the CFAA, a protected computer is one that "is used in or affecting interstate or foreign commerce or communication . . ." 18 USC § 1030(e)(2). CADRA defines a protected computer as "a computer that is used in connection with the operation of a business and stores information, programs, or code in connection with the operation of the business in which the stored information, programs, or code can be accessed only by employing a technological access barrier." Fla. Stat. § 668.002(6). This element is satisfied. The Skin

Medicinals computer hosting the website is one used in connection with the operation of Skin Medicinals' business. That business is engaged in interstate commerce. Therefore, under both the CFAA or CADRA, the definition of a "protected computer" is satisfied.

When Mr. David or others acting on his behalf accessed Skin Medicinals' "protected computer" using Ms. Ippolito's credentials, they did so without authorization or exceeded authorized access. Under the CFAA, the term "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."[4] Under CADRA, "without authorization" means one has obtained access to a protected computer but who is not an authorized user; has stolen a technological access barrier of an authorized user; or circumvented a technological access barrier without the permission of the owner of the information stored on a protected computer.[5] The evidence before me shows these elements were met. Ms. Ippolito obtained the credentials because she is a prescriber and otherwise met Skin Medicinals' criteria for obtaining credentials. Those credentials were for her use only. When Mr. David obtained her credentials and accessed the prescriber only section of the website or directed others to do so, he did so without authorization or in excess of the authority granted to Ms. Ippolito.

I find, however, that Skin Medicinals has not established a likelihood of success on the merits as to the issue of "loss" or "harm" under the CFAA and

---

[4] 18 U.S.C. § 1030(e)(6).
[5] Fla. Stat. § 668.802(9).

CADRA. At the July 1, 2024 hearing, Skin Medicinals presented no evidence of loss arising out of Optio Rx's unauthorized access to Skin Medicinals' protected computers.

Under the CFAA, "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, [and] conducting a damage assessment . . . ."[6] Under CADRA:

> "Loss" means any of the following:
>
> (a) Any reasonable cost incurred by the owner, operator, or lessee of a protected computer or the owner of stored information, including the reasonable cost of conducting a damage assessment for harm associated with the violation and the reasonable cost for remediation efforts, such as restoring the data, programs, systems, or information to the condition it was in before the violation."
>
> (b) Economic damages.
>
> (c) Lost profits.
>
> (d) Consequential damages, including the interruption of service.
>
> (e) Profits earned by a violator as a result of the violation.[7]

In support of the Motion, Skin Medicinals relied in large part on the testimony of Dr. Ashvin Garlapati. Dr. Garlapati is Skin Medicinals' co-founder and President. Dr. Garlapati submitted a declaration that was entered into evidence.[8] At the July 1 hearing, Dr. Garlapati was cross-examined and Skin Medicinals conducted re-direct testimony.

---

[6] 18 U.S.C. § 1030(e)(11).
[7] Fla. Stat. § 668.802(5).
[8] D.I. 17 (Exhibit A) (the "Garlapati Declaration").

In the Garlapati Declaration, there is one paragraph that, arguably, touches on loss. Dr. Garlapati stated that:

> Once Skin Medicinals learned that OptioRx may have infiltrated its web portal, the executive team at Skin Medicinals was diverted from their normal activities to investigate the situation. The team identified accounts with suspicious activity, analyzed the activity on those accounts, and identified the IP addresses for associated logins. Once Skin Medicinals was confident it had identified the account responsible for the unauthorized access and use, Skin Medicinals' management retained counsel to understand its legal rights and to take appropriate protective action. Skin Medicinals staff and management have devoted significant resources to uncover and begin to address OptioRx's activity.[9]

This testimony does not specify the nature of, amount of, or otherwise substantiate any "loss" attributed to any unauthorized access by Optio Rx.[10] On re-direct, Skin Medicinals attempted to elicit testimony from Dr. Garlapati regarding efforts to "remediate [Optio Rx's] access."[11] Optio Rx objected to this question on the grounds that it went beyond the scope of cross-examination and was an attempt to supplement the Garlapati Declaration.[12] I sustained the objection because remediation was not addressed in the Garlapati Declaration and in cross-examination.[13]

There is no evidence before the Court of the "reasonable cost" element of "loss" under the CFAA and CADRA. And under CADRA, there is no evidence before the Court of economic damages, lost profits, consequential damages, or profits

---

[9] Id. at ¶ 17.
[10] Insofar as the CFAA requires that such loss be in excess of $5,000, Skin Medicinals also offered no evidence as to the value of any alleged loss.
[11] Tr. of July 1, 2024 hearing, 53:5–7.
[12] Id., 53:8–13.
[13] Id., 54:5–8.

6

earned by Optio Rx as a result of any unauthorized access. While Skin Medicinals may yet be able to provide evidence of such loss in future proceedings, it did not do so in connection with this preliminary injunction proceeding. Therefore, I find that Skin Medicinals has failed to satisfy its burden of demonstrating the existence of an essential element of relief under the CFAA and CADRA. It did not demonstrate a substantial likelihood of success on the merits and has not shown irreparable harm.

Therefore, based on the record before me, I find that Skin Medicinals has failed to satisfy its burden to warrant imposition of a preliminary injunction under the CFAA and CADRA.

Dated: August 13, 2024
Wilmington, Delaware

_____
Thomas M. Horan
United States Bankruptcy Judge